DAFFIN MERCANTILE Co., INC., Plaintiff in Error, v. GEORGE L. TRAWICK, Defendant in Error.

199 So. 257
Division B
Opinion Filed December 17, 1940
Rehearing Denied January 6, 1941

*Coe & McLane,* for Plaintiff in Error;

*J. McHenry Jones,* for Defendant in Error.

WHITFIELD, P. J.—This writ of error was taken to a judgment of the Court of Record awarding $1,875.00 damages against plaintiff in error for injuries to defendant

in error and his motor vehicle wrecking truck with which the latter was towing a disabled automobile truck of the former to the latter's garage for repairs.

The amended declaration alleges that:

"On July 11, 1938, and for a long time prior thereto the Plaintiff was operating a wrecking service for motor vehicles, that is to say, he maintained what is commonly known as a motor vehicle wrecker for the purpose of transporting towing and hauling of motor vehicles which by reason of injury or otherwise are incapable of motion; that upon said date the Plaintiff received a call to go to a point on the Mobile-Pensacola Highway near Beulah and tow a certain wrecked automobile truck owned by the Defendant to West Pensacola; that the person requesting such service was an employee of the Defendant who had been entrusted by the Defendant with said automobile truck; that the person requesting such service was the authorized operator of said truck by the Defendant and after said truck became disabled it became necessary for the said operator thereof to go to a nearby place and telephone for assistance and it being necessary for the person in charge of such truck to protect the said motor vehicle, its equipment and cargo, from theft, pilferage or other injury, the said person in charge of said truck did instruct one John Mosley to take charge of and remain with said motor truck; the person requesting the service of the Plaintiff advised the Plaintiff that the said John Mosley was in charge of said truck at the site of said truck; that the Plaintiff went to the scene of the wreck and found this injured motor truck in charge of one John Mosley who had been left and placed in charge by the person who requested the service on behalf of the Defendant; that the said John Mosley proceeded to operate said motor vehicle and the Plaintiff fastened tow lines and necessary equipment from the

wrecker truck to the injured motor truck; that the Plaintiff proceeded to tow said injured motor truck towards the City of Pensacola and the party who was left in charge and entrusted with the custody of the said injured motor truck so carelessly, negligently and recklessly managed and operated said injured motor truck that the same did run close to and in front of the wrecker truck operated by the Plaintiff, causing the wrecker truck to capsize; that as a result thereof and the negligent manner in which the said injured motor was operated by the person entrusted therewith, the wrecker truck was injured and demolished; that said wrecker truck was so badly injured and demolished that it was not capable or fit for use for the purpose for which it was intended and the Plaintiff suffered the loss of large sums of money by reason thereof; that the Plaintiff as a result of the capsizing of the said wrecker truck was bruised, wounded and otherwise injured; that the Plaintiff was required to and did lay out large sums of money for medical supplies, attention and assistance and was for a long period of time unable to perform his daily duties; that the plaintiff by reason of his inability to perform his duties lost large sums of money which he would have earned except for the injuries sustained.

"WHEREFORE, the Plaintiff sues the Defendant and claims damages in the sum of Three Thousand ($3,000.00) Dollars."

A demurrer to the declaration was overruled, the grounds of the demurrer being:

"(1) That there are no facts alleged in said amended declaration showing that the John Mosley mentioned therein was acting as the agent or servant of the Defendant.

"(2) That there are no facts alleged in said amended declaration showing that the said John Mosley was operating

the truck of the Defendant with the knowledge and consent of the Defendant.

"(3) That there are no facts alleged in said amended declaration showing that the person requesting the services of the Plaintiff as alleged in his amended declaration, had any authority to appoint an agent for the Defendant or to entrust the truck of the Defendant in the charge of the said John Mosley as alleged."

Pleas were filed, being in substance: not guilty, that plaintiff was instructed by the operator of defendant's truck to "furnish a competent person to manage or operate defendant's truck while the same was being brought in by the plaintiff but the plaintiff failed to place the truck in charge of a competent operator," thereby proximately contributing to his injuries; that plaintiff proximately contributed to his injuries and damages in that plaintiff did instruct the said John Mosley to operate and manage said truck while the same was being towed by a motor vehicle of the plaintiff, and then proceeded to operate his motor vehicle while towing defendant's truck at a high and dangerous rate of speed while proceeding down a grade, and defendant's truck got out of control of the said John Mosley, causing the wrecked truck to capsize; "that at the time its truck was disabled the brakes thereof had been damaged to such an extent that they were no longer effective for the purpose of controlling the speed of its truck and that the plaintiff who is an experienced mechanic, did know or could have known upon reasonable inspection because of his experience, that said brakes were disabled and were no longer effective, but in face of such a situation plaintiff proceeded to tow defendant's truck down a grade at a rate of speed greater than proper under the circumstances, and defendant's truck because of the lack of efficient braking power and of the speed with which it was being towed got out of control of

the operator thereof running close to and in front of the plaintiff's truck causing the wrecker truck to capsize, and plaintiff because of his failure to take proper precautions for his own safety and that of his truck, thereby proximately contributed to the injuries and damage for which he sues; . . . that said John Mosley was not operating the defendant's truck with its knowledge and consent; . . . that said John Mosley was not operating its truck as the agent or servant of the defendant; . . . that the authorized operator had no authority of the defendant or of any of its officers, to entrust its truck to the said John Mosley as alleged; . . . that the plaintiff instructed and placed the said John Mosley in charge and control of defendant's truck, and thereby made him the agent and servant of the plaintiff; . . . that the trailer of the defendant which was attached to its truck was equipped with what is commonly known as vacuum brakes which said brakes are effective only when the motor of its truck is running or turning over, which fact was known or could have been known upon reasonable inspection, to the plaintiff who is an experienced mechanic, and the plaintiff proceeded to tow said truck with trailer attached, without having caused the motor of the defendant's truck to be cranked, so as to make said vacuum brakes effective, down a grade at a rate of speed greater than proper under the circumstances, and the defendant's truck with trailer attached because of the lack of sufficient braking power and of the speed with which it was being towed got out of control of the operator thereof running close to the plaintiff's truck causing the wrecker truck to capsize, and the plaintiff because of his failure to take proper precautions to his own safety and that of his truck even though he is an experienced mechanic, thereby proximately contributed to the injuries and damage for which he sues."

Testimony was taken before a jury. Motion for a

directed verdict for defendant was denied, the grounds of the motion being:

"First, that there is no evidence showing that John Mosley was operating this truck as its agent and servant;

"Second, there is no evidence showing that the said John Mosley was operating this truck with its knowledge and consent;

"Third, that there is no evidence showing that E. J. Ray, authorized driver of the Defendant, had any authority either expressed or implied, to delegate any of his duties to the said John Mosley;

"Fourth, that it appears from the evidence that the said John Mosley was acting as the agent and servant of the Plaintiff, George Trawick;

"Fifth, that the authorized driver of the Defendant's truck, E. J. Ray, had not instructed the said John Mosley to operate the Defendant's truck while the same was being towed by the Defendant;

"Sixth, that there is no evidence showing that the said E. J. Ray was present at the time Defendant's truck was being operated by the said John Mosley;

"Seventh, that it conclusively appears from the evidence that the Plaintiff was guilty of contributory negligence in permitting a young and inexperienced boy to operate the towed truck under the circumstances shown by the evidence."

Verdict and judgment were rendered for the plaintiff in $1,875.00 damages and costs.

A motion for a new trial containing twelve grounds, including the denial of a verdict for the defendant, and charges given, was denied, and the defendant took writ of error.

Errors are assigned on (1) overruling demurrer to amended declaration, (2) denying defendant's motion to

strike testimony of a witness, (3) denying defendant's motion for directed verdict, (4) denying motion for new trial.

One of the questions presented for decision is:

"QUESTION TWO: Is the evidence sufficient to justify recovery when it shows that the authorized driver of defendant's truck picked up a strange negro boy, age seventeen years, and after having an accident left the boy to guard the cargo and truck, while defendant's driver called the plaintiff to tow the wrecked truck, stating that he would find the boy at the truck, and plaintiff accompanied by one of his employees upon reaching the scene, proceeded to tow the wrecked truck steered by the negro boy, whose alleged negligence while so doing caused the injuries sued for?"

The plaintiff testified in part as follows:

"My name is George Trawick, I operate a wrecker business near Pensacola, Florida, and on July 11, 1938, was operating such business. On that date I received a telephone call from a man who presented himself as Mr. Ray, I don't know whether he said Mr. Ray, but I do recall that he said his name was Ray and was a driver for the Daffin Mercantile Company of Panama City, he told me that he had had an accident on the Mobile Highway and that he wanted us to pick it up and bring it in; he told me that he had a man there but no mention was made as to whether or not the man was in charge of the truck. As well as I can remember he was awfully anxious to get the thing in so he could continue on to Panama City and he told us to go out and pick it up. About the only thing he said about the man was that I would find a man at the truck, that he had a man at the truck. When I got there I found a colored man, at that time I did not ask what his name was but I later learned that his name was John Mosley.

He was sitting under the steering wheel and the first thing I asked him was, "Bud, do you drive that truck," and he said "Yes" and then I asked him, "Are your brakes good," and that was exactly what I asked him. He said that his brakes were good. I did not look over his truck any more than to see that his damages was in front, all of his tires were up and all of his steering mechanism was good; I did not get up there and crawl underneath the truck as I could see the damage was on the radiator, the cooling system was why the truck would not run and therefore it was not necessary for us to pick it up, in fact heavily loaded as it was we could not have possibly have picked it up without a little extra equipment or something and we did not attempt to pick it up; we merely pulled it down with all four wheels running. I did not know what kind of brakes the trailer had, after he told me he had brakes I did not make any examination. As Braswell testified, he called back after we started down and asked if the brakes were good and the boy tried them, I know that he did because we could feel them drag on the wrecker and we called back to him to let them off. In fact, those brakes were sufficient to stop the truck on a hill after they had turned me over, that is he was still on the incline when he stopped after having turned me over. The first I knew of his coming by me was when something was going past me and it was that truck, but it scared me so badly I hardly know what my reaction was. I thought I could get ahead of him, and fortunately my motor was idling, I gave it the gun but he had me, I couldn't beat him and he just went down the hill and at that time we were going through a highway department sign there and I just checked up and I suppose I uttered a prayer. One of the thoughts I had was that I could get out there when the truck was passing me on the hill and that cable might turn just at the time and I

might get caught in it so I had better stay in there. It swung the back end of the wrecker around just the same as if you tied a tin can to a dog's tail, turning us over."

On cross:

'The first 1 knew of this was when I received the call from Mr. Ray and 1 talked to Mr. Ray myself. I do not recall that there was conversation as to whether or not I would make repairs there but as I recall the conversation he wanted to have temporary repairs made on his truck in order that he could proceed to Panama City, but there was no conversation between Mr. Ray and myself relative to my making whatever repairs I felt necessary at the scene of where the truck was; at the scene of the wreck there was no discussion about patching up the radiator, and the effect of the conversation was that I stated that it would be better to bring it in, for we do not ever attempt to make repairs at the scene of the wreck. At the time Mr. Ray requested me to go for the truck to bring it in he did not request that I carry somebody out there to bring in or operate the truck and there was no conversation to that effect. He stated that I would find the truck out there and I did find a man with the truck." . . .

"I have had experience in towing automobiles, having towed quite a number of them over a period of about seven years, but am not a mechanic and did not do mechanical work, but some of it I knew about, in fact I changed my first tire there after I opened up. We have mechanics at our shop and I haven't done any mechanical work for the last four years."

The driver of the truck testified:

"There was a negro boy by the name of John Mosley with me on the truck and the reason I had him on the truck with me was that he was in Mobile and wanted a ride to

Panama City, as he was going on through to Port St. Joe, so I told him if he would help me load the truck he could go through with me. He had not driven that truck before, he was not employed by the Daffin Mercantile Company and to my knowledge, had never been employed by them, in fact they didn't even know him. I am not certain as to his age but I would judge him to be about fourteen or fifteen years old. When I started to come in to the sheriff's office I just told John Mosley to stay there with the truck until I sent for it. The truck was loaded with between twelve and fourteen tons of general merchandise, groceries and stuff, it being the type of merchandise that could easily be taken off the truck. All that I told John Mosley was to stay there with the truck until I sent back for it. After I came back to town I called up Mr. George Trawick and told him to go out there and fix the radiator, that it was knocked back against the fan and a hole knocked in it; he said it would be cheaper to bring the truck in town and fix it, that he could not fix it there as he did not have the equipment there, and that he would bring the truck into town. . . . I never did instruct John Mosley to drive that truck, either into town or any other time. On the 24th of February I will have worked for Daffin Mercantile Company for three years, and Mr. Daffin who was present at the trial is my boss. Mr. Daffin instructed me not to let anybody drive the truck. I was in town at the time the wrecked truck was picked up by the wrecker of Trawick and therefore was not any place near the wreck, and did not arrive at the scene of the accident until after it had happened. In instructing John Mosley to stay there with the truck as I was leaving, they took me away very hurriedly.

John Mosley testified:

"I did not drive that truck at any time prior to the

accident; I was not employed by the Daffin Mercantile Company at that time nor have I·ever been employed by that company, I was getting a ride back to Panama City and Port St. Joe. The reason we stopped on the highway out there was because we ran into a cow and busted the radiator; Mr. Ray was the driver of the Daffin Mercantile Company's truck, he being the man who has previously testified in this case. Mr. Ray then went to call up and left me watching the truck and Mr. Ray did not tell me to drive that truck. A wrecker truck came up. I am eighteen years old now and was seventeen at the time this thing happened. When the wrecker truck came up I remember having some conversation with one of the gentlemen on the truck, and I have identified the man with whom I had the conversation as being Mr. Trawick. He asked me if I could drive a truck and I told him 'Yes, sir.' When the wrecker truck came up I was sitting on the right hand side of the truck and not the driver's side, and I was smoking a cigarette. After I told him that I could drive a truck he told me to get over there and drive, in other words to get in the driver's seat; then he 'hooked up the cable on the disabled truck."

Mr. Trawick, the plaintiff, was employed to tow the disabled truck to his garage for repairs. His testimony shows he was experienced in such towing and he assumed responsibility for letting the negro boy steer the truck being towed. The boy was merely taking care of the truck and its load of merchandise pending the arrival of the wrecker truck. Mr. Trawick took Mr. Braswell with him to tow in the truck. Without ascertaining the competency of the negro boy, Mr. Trawick let him steer the heavily loaded truck being towed by Mr. Trawick in performing in his own way the towing of the defendant's truck. This bars recovery of damages from the defendant who was not shown

to be responsible either directly, or indirectly through the truck driver, for letting the boy steer the defendant's truck. The driver of the defendant's truck left the boy with the loaded truck until the wrecking truck arrived; and Mr. Trawick was so informed when he was employed to tow the defendant's truck to Trawick's garage for repairs.

The accident to defendant's truck created an emergency but the evidence does not show that anything was said or done by or for the defendant to indicate that the negro boy left by defendant's truck driver to protect the disabled loaded truck on the highway was competent or authorized by defendant's truck driver to drive the truck or to steer it while it was being towed to a repair garage.

The motion for a new trial should have been granted.

The judgment is reversed.

TERRELL, C. J., BROWN and CHAPMAN, J. J., concur.